UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ADEOLA KOIKI,

                Petitioner,                  **MEMORANDUM & ORDER**

      v.                          No. 18-CV-6216 (RPK)

NEW YORK,

                Respondent.
-----------------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        Petitioner Adeola Koiki is currently serving a term of post-release supervision after being convicted in state court of rape, sexual abuse, and other related charges.  The state appellate court affirmed his convictions on appeal, and three separate state post-conviction petitions likewise failed.  Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254, raising three grounds for relief: (1) that the trial court violated his rights under the Confrontation and Due Process Clauses when it barred him from cross-examining one of his accusers about certain criminal cases then pending against her; (2) that his convictions must be vacated because they were based on legally insufficient evidence, against the weight of the evidence, and inconsistent with the jury's verdicts of acquittal on other, related charges; and (3) that his trial and appellate counsel provided ineffective assistance by failing to properly raise the first two claims.  As set forth below, none of his claims warrant federal habeas relief.  Accordingly, the petition is denied.

## BACKGROUND

### I.  Trial Court Proceedings

        Petitioner faced a jury trial for two separate sexual assaults of two different women.  *See generally* Tr. (Dkt. #9-1).  The following facts are taken from the state-court record, viewed in the light most favorable to the prosecution.  *See McDaniel v. Brown*, 558 U.S. 120, 133 (2010).

### A.   May 21, 2011 Assault of JJ

Shortly after midnight on May 21, 2011, JJ and a friend drove to an apartment building to meet petitioner, who had responded to JJ's online advertisement for private dances.[1]  *See* Tr. 25–27.  Petitioner had agreed to pay JJ $200 to perform a private dance for him.  *Id.* at 27–28.  JJ understood petitioner to have agreed that there would be "no touching involved."  *Id.* at 27.

When JJ arrived at the building—20 Vandalia Avenue in Brooklyn—she called petitioner, who told her to come up to the eleventh floor "alone."  *Ibid.*  Petitioner met JJ in the hallway and told her that he needed to go to an ATM to get cash, to which JJ replied that she would go back downstairs and wait for him.  *See id.* at 28.  JJ reentered the elevator to do so, but before the door closed, petitioner "stuck a knife into the elevator and told [JJ] to follow him."  *Ibid.*  Petitioner then "made [JJ] follow him into the staircase," which she did without resisting because she "was afraid" and wanted "to get out of the situation as fast as [she] could."  *Id.* at 28–29.  According to JJ, once they were in the stairwell, petitioner, who was still holding the knife, touched and rubbed JJ and then "undid his pants and put his penis in [JJ's] mouth and made [her] give him oral sex."  *Id.* at 30–31.  A few minutes later, petitioner told JJ to "undo [her] pants" so that he could penetrate her.  *Id.* at 31.  JJ did so.  *Ibid.*  JJ testified that, during the assault, she "begged [petitioner] to let [her] go" and not to "hurt [her]," and "told him [she] had a child and [she] was afraid."  *Ibid.*  JJ testified that she never consented to have sex with petitioner.  *Id.* at 66.  JJ testified that the assault lasted ten to fifteen minutes, and then petitioner let JJ go.  *Id.* at 35–36.

JJ exited the building, returned to the car, and asked her friend to drive away.  *Id.* at 36.  At some point shortly thereafter, petitioner texted JJ, saying "I am sorry I had to do that to you" and "I should have paid you because you are cute."  *Id.* at 41, 78–79.  JJ replied to ask why petitioner

---

[1] Victims of sex offenses are referred to by their initials.  *See* Order dated 1/14/2019.

had not paid her. *See id.* at 80. About two days after the assault, JJ went to a police precinct to report the incident. *Id.* at 36–37. JJ testified that she became "a little uncomfortable and scared," so she told police "to forget about it" and left the station; but police recontacted her a few days later and she completed the report. *Id.* at 37–38, 89.

### B.  *May 21, 2011 Assault of MB*

On May 31, 2011, petitioner responded to an online ad posted by MB; the two arranged for MB to meet petitioner at 20 Vandalia Avenue, where petitioner would pay her $180 for an hour of sex. *See id.* at 91–94. A man named Justin Walker, who MB testified was her boyfriend, drove her to meet petitioner. *See id.* at 115–16, 141.

MB arrived at the building shortly after 3:00 AM and proceeded to the eleventh floor. *See id.* at 94, 140. There she encountered petitioner and, after confirming that he was the man she had spoken to on the phone, followed him into the stairwell. *See id.* at 94–96. Once they arrived, MB attempted to confirm that petitioner would pay her $180, but he responded: "[N]o, I am not about to do this with my money." *Id.* at 96. MB understood this statement to mean that petitioner wanted her to perform oral sex on him "for free." *Id.* at 96–97. MB testified that petitioner "had a knife," so she "felt scared" and agreed to perform oral sex, during which petitioner held the knife behind his back. *Id.* at 97–98.

Petitioner then ordered MB to follow him to the thirteenth floor, where he became more aggressive: he "tried to scare [MB] into doing the sexual acts," including by hitting MB "in [her] head," choking her, and "lunging at [her]" with the knife, resulting in cuts to her arm. *Id.* at 98–102, 202, 226, 237. These attacks left MB feeling "helpless." *Id.* at 105. Petitioner then had sex with MB for 45 to 50 minutes, all the while holding the knife. *Id.* at 103, 163. When he was done, petitioner left the stairwell, and MB left the building and called the police. *Id.* at 100, 104.

MB waited at the scene for police to arrive.  When they did, MB was "clearly upset, fearful, had a disheveled look and was crying."  *Id.* at 268.  She told police "[t]hat she was raped."  *Id.* at 269.  An ambulance transported MB, along with one of the officers, to Kings County Hospital, where she received a rape kit.  *Id.* at 104, 269.  Hospital records noted that MB "g[ot] emotional" when describing the incident and her "feeling [of] fearing for [her] life," and indicated that MB had "multiple abrasions, swelling to [the] left neck, right cheek, [and] left wrist, [and] laceration[s to the] left top of eye and left knee" as well as to the wrist.  *Id.* at 226, 228–29, 255.  No vaginal injuries were noted.  *Id.* at 241.  The jury heard testimony that MB's injuries were consistent with "being punched in the face," "being choked," and "being struck with a knife," and that the finding of no vaginal injuries was not inconsistent with forced sexual assault.  *Id.* at 236–38, 241.

On cross examination, defense counsel sought to impeach MB's credibility.  MB admitted to having theft and marijuana convictions in Georgia.  *Id.* at 193.  Defense counsel also sought to inquire into "three open ACDs"—adjournments in contemplation of dismissal—in MB's file.  *Id.* at 150.  "An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice."  N.Y. Crim. Proc. Law § 170.55(2).  "The granting of an adjournment in contemplation of dismissal" is not to "be deemed to be a conviction or an admission of guilt."  *Id.* § 170.55(8).  "'The purpose of the statutory ACD procedure was to provide a shield against the criminal stigma that would attach to a defendant accepting such an adjournment.'"  *Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298, 302 (E.D.N.Y. 2012) (quoting *Lancaster v. Kindor*, 471 N.Y.S.2d 573, 579 (App. Div. 1984)).

At the time of trial, MB had open ACDs relating to arrests for shoplifting, marijuana, and disorderly conduct.  Tr. 152–53.  Petitioner's counsel told the state court he "want[ed] to question [MB] with regard to only one of those cases," namely the "arrest for disorderly conduct," which

4

counsel argued "ha[d] some probative value in terms of resisting and arguing with a police officer." *Id.* at 152. The state court denied the request, relying on several appellate division cases to find that it was "not appropriate to cross examine [MB] on the open ACDs" because "[s]he did not admit to those offenses" and "still ha[d] some rights under those ACDs." *Id.* at 150–51.

### C. *Verdict and Sentencing*

The jury rendered a split verdict. As to MB, the jury convicted petitioner of rape in the first degree, criminal sexual act in the first degree, two counts of sexual abuse in the first degree, menacing in the second degree, and harassment in the second degree, but acquitted him of assault in the second degree, assault in the third degree, and criminal obstruction of breathing or blood circulation. *Id.* at 486–87. And as to JJ, the jury convicted petitioner of assault in the second degree and menacing in the third degree, but acquitted him on all other charges—rape in the first degree, criminal sexual act in the first degree, two counts of sexual abuse in the first degree, and menacing in the second degree. *Id.* at 484–86.

The trial court sentenced petitioner to a total of three months in prison for the convictions relating to JJ, to run consecutively to a total of seven years in prison and ten years of post-release supervision for the convictions relating to MB. *See* Sentencing Tr. 8–9 (Dkt. #9-1).

## II. Subsequent State-Court Proceedings

### A. *Direct Appeal*

Petitioner appealed his conviction, raising three arguments. *See* Pet.'s App. Br., Warden's Ex. B (Dkt. #9-2). First, he argued that, because various contradictions and inconsistencies in MB's testimony rendered her incredible, the evidence was legally insufficient to convict him of the charges relating to MB and the jury's verdict on those counts was against the weight of the evidence. *See id.* at 22–29. Second, petitioner contended that the trial court violated his rights under the Due Process and Confrontation Clauses when it prohibited his counsel from cross-

examining MB regarding her open ACDs.  *See id.* at 30–37.  Finally, petitioner argued that, because the jury had acquitted him of second-degree menacing and harassment with respect to JJ, and those counts depended on his brandishing of a knife, the evidence was legally insufficient to support the jury's convictions on the third-degree menacing and harassment charges.  *See id.* at 37–46.

The appellate division affirmed petitioner's convictions.  *See People v. Koiki*, 32 N.Y.S.3d 516 (App. Div. 2016).  The court found that the evidence was "legally sufficient to establish the defendant's guilt of rape in the first degree, criminal sexual act in the first degree, sexual abuse in the first degree (two counts), menacing in the second degree, menacing in the third degree, and harassment in the second degree (two counts) beyond a reasonable doubt," and that jury's guilty verdicts were "not against the weight of the evidence."  *Id.* at 516.  And it held that petitioner's claims concerning the cross-examination of MB were "partially unpreserved for appellate review and, in any event, without merit."  *Ibid.*

On September 16, 2016, the New York Court of Appeals denied petitioner's application for leave to appeal.  *See People v. Koiki*, 66 N.E.3d 5 (N.Y. 2016).

*B.  440.10 Proceeding*

On November 13, 2017, petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10.  *See* Pet.'s Post-Conviction Mot., Warden's Ex. G (Dkt. #9-3).  The motion raised four arguments: (1) that the evidence was legally insufficient to support his convictions for rape, sexual abuse, and criminal sex act with respect to MB, *id.* at 27–35; (2) that the jury's verdict convicting petitioner of rape, criminal sexual act, and sexual abuse with respect to MB was inconsistent with and repugnant to the jury's verdict acquitting him of assaulting MB, *id.* at 20–26; (3) that the evidence was legally insufficient to support petitioner's convictions for menacing with respect to MB, *id.* at 35–39; and (4) that petitioner's trial counsel rendered ineffective assistance by failing to raise the latter two arguments, *id.* at 40–53.

6

The state postconviction court denied petitioner's motion on February 20, 2018. *See* Postconviction Order, Warden's Ex. I (Dkt. #9-4). The court found that petitioner's first three arguments were procedurally barred because they "assert[ed] the same arguments that were previously presented and rejected on the merits on appeal," even if petitioner now reframed them slightly. *Id.* at 4. In any event, the court determined that even if it were to treat petitioner's claims as not duplicative of his arguments on direct-appeal, the claims were "all record-based" and thus "procedurally barred on the basis that [petitioner] was required to raise [them] . . . on his direct appeal." *Id.* at 4–5. The court rejected petitioner's ineffective-assistance claim on a similar basis: because the "[g]rounds for [petitioner's] claim [were] wholly on-the-record," they could not be brought in the first instance under the version of Section 440.10 then in effect. *Id.* at 5.

Petitioner sought leave to appeal on March 11, 2018, *see* Pet.'s Mot. for Leave to Appeal, Warden's Ex. J (Dkt. #9-4), but on July 5, 2018, the appellate division denied his request, *see* Order Denying Leave to Appeal, Warden's Ex L (Dkt. #9-5).

### C. *Coram Nobis Petition*

On March 3, 2018, shortly before seeking leave to appeal the denial of his Section 440.10 application, petitioner filed another motion with the appellate division—this time, a petition for a writ of error *coram nobis*. *See* Pet.'s *Coram Nobis* Pet., Warden's Ex. M (Dkt. #9-5). Petitioner now argued that his *appellate* counsel provided ineffective assistance for failing to argue on direct appeal (1) that petitioner's menacing conviction with respect to MB was inconsistent with the purported dismissal of a charge for criminal possession of a weapon, *see id.* at 7–15; (2) that the jury's verdicts convicting petitioner of rape, sexual abuse, and criminal sex act with respect to MB was based on legally insufficient evidence given the acquittal on the related charges of assault and criminal obstruction of breathing, *see id.* at 15–26; (3) similarly, that the same verdicts were inconsistent with and repugnant to the acquittal on the assault charge with respect to MB, *see id.*

at 26–33; and (4) that petitioner's trial counsel provided ineffective assistance of counsel by failing to preserve a Confrontation Clause claim relating to two of MB's three ACDs, *see id.* at 34–39.

On August 8, 2018, the appellate division rejected petitioner's claims in a one-sentence order stating that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Koiki*, 78 N.Y.S.3d 690, 691 (App. Div. 2018).

## III.  Federal Habeas Petition

Petitioner then turned to federal court, filing the instant petition for relief under 28 U.S.C. § 2254 on October 16, 2018.  *See* Pet. (Dkt. #1).  Petitioner raises nine claims:

- *First,* petitioner contends that the state trial court's refusal to allow him to cross-examine MB as to her three open ACDs violated the Confrontation Clause and petitioner's Due Process right to present an effective defense and to a fair trial.  Pet. 5–6.

- *Second*, petitioner argues that his convictions for third-degree menacing and second-degree harassment with respect to JJ are inconsistent with the jury's decision to acquit petitioner of every other charge related to JJ.  *Id.* at 6.

- *Third*, petitioner asserts that his convictions for first-degree rape, first-degree criminal sexual act, and first-degree sexual abuse as to MB were (1) based on legally insufficient evidence, (2) against the weight of the evidence, and (3) fatally inconsistent with both (a) the jury's decision to acquit petitioner of second- and third-degree assault and of criminal obstruction of breathing as to MB and (b) the trial court's dismissal of charges for (or the prosecutor's decision not to charge petitioner with) criminal possession of a weapon.[2]  *Id.* at 6–7.

- *Fourth*, and similarly, petitioner argues that his conviction for second-degree menacing with respect to MB was inconsistent with the trial court's dismissal of charges for (or the prosecutor's decision not to charge petitioner with) criminal possession of a weapon.  *Id.* at 8–9.

- *Fifth*, petitioner contends his trial counsel provided ineffective assistance for failing to raise the third and fourth claims just discussed at trial.  *Id.* at 10–11.

- *Sixth*, petitioner asserts that his *appellate* counsel provided ineffective assistance for failing to raise the fourth claim discussed above on direct appeal.  *Id.* at 12–13.

- *Seventh*, petitioner contends that his appellate counsel was likewise ineffective for failing to raise the third claim discussed above on direct appeal.  *Id.* at 13–14.

---

[2] The parties give different accounts of whether petitioner was ever charged with weapons possession, *compare* Warden's Opp'n 7, 10, 11 (Dkt. #9), *with* Pet.'s Reply Br. 7 (Dkt. #12), but whether petitioner ever faced such a charge does not affect any analysis in this case.

- *Eighth*, petitioner argues that his appellate counsel was ineffective for failing to raise the fifth claim discussed above. *Id.* at 15–16.

- *Ninth*, and finally, petitioner claims that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for failing to preserve the constitutional claims with respect to all three of MB's open ACDs. *Id.* at 17–18.

For ease of understanding, I group petitioner's claims into two buckets:

*ACD Claims.*  In these claims, petitioner argues that the trial court violated his rights under the Confrontation and Due Process Clauses when it prohibited him from cross-examining MB as to her three open ACDs, that trial counsel was ineffective for not preserving this claim with respect to two of the three ACDs, and that appellate counsel was ineffective for not raising the ineffective-assistance-of-trial-counsel claim.

*Challenges to the Jury's Verdict.*  In these claims, petitioner alleges that his convictions on certain counts are void because they are inconsistent with the jury's decision to acquit him of other charges.  For the same reason, petitioner also argues that the jury's verdict was legally insufficient and against the weight of the evidence.  And he alleges that his trial and appellate counsel provided ineffective assistance by failing to raise these arguments.

## STANDARD OF REVIEW

A person in custody pursuant to a state-court judgment may seek a writ of habeas corpus on the ground that he is being held "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under Section 2254, subject to exceptions not applicable here, a federal court may review a petitioner's claims only if the applicant has exhausted the remedies available to him in the courts of his state.  28 U.S.C. § 2254(b)(1)(A).  "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court . . . and (ii) informed that court (and lower courts) about both the

factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276–77 (1971)).

Federal review of state convictions is circumscribed by the related doctrine of procedural default. "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 (1991)) (emphasis omitted). "Out of respect for finality, comity, and the orderly administration of justice," federal courts generally may not entertain such defaulted claims through habeas unless the petitioner shows "cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). A state prisoner who fails to make those showings can only receive habeas review if he "advance[s] . . . a credible and compelling claim of actual innocence," *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019) (quoting *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012)), such that "failure to consider the claim[] will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750.

AEDPA also constrains federal review of claims that have been preserved. So long as a state court adjudicated a litigant's claim on the merits, a federal court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

"Clearly established Federal law" refers to "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (alterations omitted) (quoting *Williams v. Taylor*, 529 U.S. 362,

412 (2000)).  A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision involves an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," *ibid.*, meaning there is "no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  Finally, a determination that a state-court decision was "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), requires more than that a federal habeas court "would have reached a different conclusion in the first instance," *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quotation marks omitted) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "If the state record is 'ambiguous' such that two different views of the facts find fair support in the record," AEDPA "mandates deference to the state court's fact-finding." *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001) (citation omitted).

These standards are "intentionally difficult to meet," *Woods v. Donald*, 575 U.S. 312, 316 (2015) (citation and quotation marks omitted), because federal habeas review is "a 'guard against extreme malfunctions in the state criminal justice systems,'" not "a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 43 (2011) (quoting *Richter*, 562 U.S. at 102–03).

## DISCUSSION

Petitioner has not demonstrated that he is entitled to relief on either his claims relating to the cross-examination of MB or his claims relating to the sufficiency of the evidence and the consistency of the jury's verdicts.

11

## I.  ACD Claims

Petitioner first claims that the trial court violated the Confrontation and Due Process Clauses when it limited his ability to cross-examine MB regarding her three open ACDs.  Petitioner also contends that his trial and appellate counsel were ineffective for failing to properly preserve and present these claims both at trial and on appeal.  These arguments fail.

### A.  Substantive Claims

Petitioner's Confrontation-Clause and due-process claims do not warrant habeas relief.

#### 1.  Petitioner's Claims Regarding Two of the Three ACDs are Procedurally Barred

As an initial matter, petitioner's claims with respect to two of MB's three then-pending ACDs are barred because the appellate division rejected them on independent and adequate state law grounds.  At trial, petitioner's counsel indicated that he "want[ed] to question [MB] with regard to only" the third of MB's three pending ACDs, Tr. 152, and as a result the appellate division found that petitioner's Confrontation Clause and due process claims with respect to the first two ACDs were "unpreserved for appellate review," *Koiki*, 32 N.Y.S.3d at 516.  "New York courts' application of their rules regarding the preservation of legal issues for appellate review in criminal cases—codified at N.Y. Crim. Proc. Law § 470.05[2]—constitute[s] independent and adequate state grounds" for the decision, barring relief under Section 2254.  *McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at *2 (2d Cir. Sept. 29, 2021), *cert. denied*, 142 S. Ct. 1235 (2022); *see Garvey v. Duncan*, 485 F.3d 709, 720 (2d Cir. 2007) ("[T]he procedural bar of § 470.05(2) constitutes an independent and adequate state ground for the Appellate Division's holding.").  That is true even though the appellate division, in the alternative, rejected petitioner's claims on the merits, *see Koiki*, 32 N.Y.S.3d at 516.  *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (holding that a state court's finding that petitioner's "claims were not preserved for appellate review" under N.Y. Crim. Proc. Law § 470.05(2) "barred [the Court] from reaching the merits of

his . . . federal claims . . . even where the state court has also ruled in the alternative on the merits of the federal claim[s].") (discussing *Harris v. Reed*, 489 U.S. 255 (1989)).

> 2.   <u>In Any Event, With Respect to All Three ACDs, Petitioner's Claims Lack Merit</u>

On the merits, and even considering MB's first two ACDs, petitioner has failed to show an entitlement to relief based on purported violations of the Confrontation and Due Process Clauses.

> i.   *The Trial Court's Evidentiary Ruling Did Not Violate the Confrontation Clause*

"Supreme Court law clearly establishes that, under the Sixth Amendment's Confrontation Clause, a criminal defendant must have a meaningful opportunity to cross-examine witnesses against him." *Alvarez v. Ercole*, 763 F.3d 223, 229–30 (2d Cir. 2014) (citation and quotation marks omitted). But while the Clause guarantees "an *opportunity* for effective cross-examination," it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see Davis v. Alaska*, 415 U.S. 308, 316 (1974) (explaining that cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation" of a witness); *see also United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993) ("The scope and extent of cross-examination are generally within the sound discretion of the trial court."). As a result, limits that a trial judge imposes on cross-examination comport with the Confrontation Clause so long as "the jury is in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility." *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990) (citation and quotation marks omitted).

13

"That wide discretion, in combination with the limited scope of habeas review, drastically limits the situations in which a habeas petitioner can prevail on a claim that his right to cross-examine was unfairly limited." *Smith v. Lee*, No. 12-CV-6215 (PGG) (HBP), 2015 WL 5011422, at *8 (S.D.N.Y. Aug. 24, 2015) (citing *Alvarez*, 763 F.3d at 230). To succeed on a Section 2254 claim under the Confrontation Clause, a petitioner must persuade the federal court "not only that the trial court abused its broad discretion by precluding cross-examination . . . but also that the [state appellate court] could not reasonably have determined that the [evidence] would have been excludable had the trial court properly applied standard rules of evidence." *Alvarez*, 763 F.3d at 230 (citations and quotation marks omitted).

Petitioner cannot make the required showing. MB's three open ACDs—involving arrests for shoplifting, marijuana, and disorderly conduct—did not bear directly on any of the charges brought against petitioner. And their relevance to credibility was limited. Neither the marijuana nor the disorderly conduct offenses appear to have involved any dishonesty, and given that MB had already admitted on cross-examination to having been convicted of a theft offense in Georgia, any additional impeachment value from inquiring about the shoplifting incident "was slight." *Smith*, 2015 WL 5011422, at *7–8 (denying Section 2254 relief based upon purported violations of the Confrontation and Due Process Clauses stemming from the trial court's decision not to admit extrinsic evidence of a witness's inconsistent prior statement). Under those circumstances, the preclusion of cross-examination as to the open ACDs did not leave the jury without "facts sufficient to make a discriminating appraisal of [MB's] credibility." *Roldan-Zapata*, 916 F.2d at 806. The appellate division's rejection of petitioner's claim as "without merit," *Koiki*, 32 N.Y.S.3d at 516, accordingly did not run afoul of clearly established federal law.

In any event, even assuming the trial court's ruling did violate the Confrontation Clause, relief under Section 2254 is warranted only if the constitutional error "had substantial and injurious

14

effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation and quotation marks omitted); *see* Warden's Opp'n 17–18.  And petitioner cannot satisfy that standard here.  To start, an evidentiary error is more likely to be harmless where the evidence improperly excluded—like the evidence here—relates to a witness's credibility rather than to the defendant's ultimate guilt or innocence.  *See United States v. Jackson*, 345 F.3d 59, 78 (2d Cir. 2003).  Likewise, unrealized opportunities for impeachment are more likely to be harmless and less likely to result in prejudice where, as here, the defense has already impeached the witness's credibility with other evidence.  *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002).  And finally, MB's testimony was corroborated by other evidence, including medical evidence consistent with sexual assault.  That corroboration increases the likelihood that the missed opportunity for impeachment constituted harmless error.  *See United States v. Estrada*, 430 F.3d 606, 622 (2d Cir. 2005); *Fuller v. Gorczyk*, 273 F.3d 212, 221 (2d Cir. 2001).  For all of these reasons, petitioner cannot show that any Confrontation Clause error in the trial court's decision with respect to MB's open ACDs had a "substantial and injurious effect" on his defense.  *Brecht*, 507 U.S. at 623.

ii.     *The Limitation on Cross-Examination Did Not Violate Due Process*

The trial court's limitations on cross-examination also did not violate petitioner's rights under the Due Process Clause.  A state court evidentiary ruling can justify a grant of habeas relief if the ruling "so infused the trial with unfairness as to deny due process of law."  *Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (citing *Lisenba v. California*, 314 U.S. 219, 228 (1941)).  Meeting that standard requires showing that improperly excluded evidence, "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record" had it been admitted.  *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985); *see Vega v. Walsh*, 669 F.3d 123, 126

(2d Cir. 2012). In other words, the erroneously excluded evidence "must have been 'crucial, critical, [and] highly significant'" to the petitioner's defense. *Collins*, 755 F.2d at 19 (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414–15 (5th Cir. 1982)).

For the same reasons just explained, *see* pp. 14–15, *supra*, it is unlikely that the preclusion of cross-examination as to MB's open ACDs prejudiced petitioner in any meaningful fashion. As a result, given the ample other evidence supporting the jury's verdict, petitioner cannot establish that any evidentiary error in limiting cross-examination as to the ACDs "so infused [his] trial with unfairness as to deny [him] due process of law." *Estelle*, 502 U.S. at 75.

### B. Corresponding Ineffective-Assistance-of-Counsel Claims

Petitioner also argues that his trial counsel was ineffective for failing to properly preserve his Fifth and Sixth Amendment arguments with respect to MB's first two ACDs, and that his appellate counsel was ineffective for failing to raise that ineffective-assistance claim on direct appeal. *See* Pet. 17–18. To establish an ineffective-assistance claim, a petitioner must show that (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Because the impeachment value of MB's ACDs was slight and substantial evidence supported petitioner's convictions, *see* pp. 14–15, *supra*, petitioner fails to demonstrate *Strickland* prejudice.

These ineffective-assistance claims are accordingly denied.

## II. Challenges to the Jury's Verdict

Petitioner next challenges each of the guilty verdicts in his case, arguing that these verdicts were (1) against the weight of the evidence, (2) supported by legally insufficient evidence, and (3) internally inconsistent. He also argues that his trial and appellate lawyers were ineffective for failing to make these arguments in state court. These claims likewise fail.

16

A. *Substantive Claims*

Petitioner's claims that the verdicts were against the weight of the evidence and internally inconsistent are not cognizable on habeas review.  And his claim that the prosecution presented legally insufficient evidence to sustain the convictions is unavailing.

1.   Weight-of-the-Evidence Claims Are Not Cognizable on Habeas Review

Petitioner argues that his convictions for each of the charged crimes were against the weight of the evidence presented at trial.  *See* Pet. 6–10.  "'Weight of the evidence' claims stem from N.Y. C.P.L. § 470.15(5), which allows an intermediate appellate court to reverse or modify a conviction where the court determines that the verdict was, in whole or in part, against the weight of the evidence, meaning that the 'trier of fact has failed to give the evidence the weight it should be accorded.'"   *Nylander v. Smith*, No. 07-CV-457 (SLT), 2010 WL 1292297, at *6 (E.D.N.Y. Mar. 30, 2010).  Accordingly, "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus" in federal court. *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011); *see Correa v. Duncan,* 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (explaining that, because "a 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)," federal habeas courts are "precluded from considering [such] claim[s]"); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  Petitioner's claims are not cognizable and are thus denied.

2.   Inconsistent-Verdict Claims Do Not Implicate Clearly Established Federal Law

Petitioner next argues that the jury's guilty verdicts on certain charges were at odds with acquittals it rendered on other charges.  *See* Pet. 9 (arguing that petitioner's convictions for menacing and harassment with respect to JJ were inconsistent with petitioner's acquittal for "every other charge" with respect to JJ); *id.* at 9–10 (arguing that petitioner's convictions for rape, criminal

17

sexual act, and sexual abuse with respect to MB could not be squared with the jury's acquittals for assault and criminal obstruction of breathing and the fact that petitioner was not charged with criminal possession of a weapon).  But under federal law, "a criminal defendant may not attack a jury's finding of guilt on one count as inconsistent with the jury's verdict of acquittal on another count."  *Bravo-Fernandez v. United States*, 580 U.S. 5, 12 (2016) (citing *United States v. Powell*, 469 U.S. 57, 58–59 (1984)).  As a result, the appellate division did not run afoul of clearly established federal law by rejecting petitioner's claims that the jury's verdict was internally inconsistent.  And to the extent petitioner's claims sound in protections against inconsistent verdicts under New York law, *see, e.g.*, *People v. DeLee,* 26 N.E.3d 210, 213 (N.Y. 2014)*,* those claims are not cognizable on federal habeas review, *see* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).

### 3.   Petitioner's Sufficiency-of-the-Evidence Claims Lack Merit

Finally, petitioner cannot show that the appellate division's conclusion that his convictions were supported by legally sufficient evidence reflected an unreasonable application of clearly established federal law.

Claims that the evidence was legally insufficient to support a conviction implicate the Fourteenth Amendment's Due Process Clause and are thus cognizable on federal habeas review. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979).  But a petitioner bringing a sufficiency claim "bears a very heavy burden."  *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation marks omitted).  Such a claim can succeed only when, upon "review[ing] the evidence in the light most favorable to the State," it is clear that "no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."  *Ibid.* (citing *Jackson*, 443 U.S. at 319).  Under that standard, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that

18

the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel*, 558 U.S. at 133 (quoting *Jackson*, 443 U.S. at 326). Likewise, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). This "limited review" ensures that courts "do[] not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson*, 443 U.S. at 319).

A "twice-deferential standard" of review applies to sufficiency-of-the-evidence challenges on federal habeas review, *Parker v. Matthews*, 567 U.S. 37, 43 (2012), because "the deference to state court decisions required by [28 U.S.C.] § 2254(d) is applied to the state court's already deferential review," *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). Accordingly, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Matthews*, 567 U.S. at 43 (citation and quotation marks omitted).

"When considering the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." *Ponnapula*, 297 F.3d at 179 (citation, quotation marks, and alterations omitted). I consider the evidence supporting each of petitioner's challenged convictions with respect to each victim in turn.

### i. Convictions with Respect to MB

The prosecution presented legally sufficient evidence to support each of petitioner's convictions with respect to MB.

*Rape in the First Degree.* As relevant here, "[a] person is guilty of rape in the first degree when he . . . engages in sexual intercourse with another person . . . [b]y forcible compulsion." N.Y. Penal Law § 130.35(1). "[F]orcible compulsion can be established by physical force or a threat which places a person in fear of immediate death or physical injury." *People v. Black*, 757

19

N.Y.S.2d 635, 637 (App. Div. 2003) (citing N.Y. Penal Law § 130.00(8)).  Here, MB testified that she had sex with petitioner and that petitioner "tried to scare [her] into doing the sexual acts" by hitting her "in [her] head," choking her, and "lunging at [her]" with a knife, leaving her feeling "helpless."  Tr. 98–105, 202, 226, 237.  And medical evidence of MB's injuries was consistent with her version of events.  *See id.* at 226, 236–41, 255.  On that record, the appellate division's rejection of petitioner's sufficiency claim with respect to his rape conviction was not objectively unreasonable.  *See, e.g.*, *Black*, 757 N.Y.S.3d at 637 (affirming rape conviction against a sufficiency challenge where, as here, "[t]he victim's testimony clearly detailed that she was subjected to both" physical force and threats of physical force).

     *Criminal Sexual Act in the First Degree.*  "A person is guilty of criminal sexual act in the first degree when he . . . engages in oral sexual conduct or anal sexual conduct with another person . . . [b]y forcible compulsion."  N.Y. Penal Law § 130.50(1).  MB testified that, because petitioner "had a knife," she "felt scared" and submitted to oral sex with petitioner.  Tr. 97–98.  The jury was entitled to credit that testimony, so again, the appellate division's holding that sufficient evidence existed to support petitioner's conviction did not run afoul of clearly established federal law.

     *Sexual Abuse in the First Degree.*  "A person is guilty of sexual abuse in the first degree when he . . . subjects another person to sexual contact . . . [b]y forcible compulsion."  N.Y. Penal Law § 130.65(1).  The statute defines "sexual contact" to mean "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party," including "the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing."  *Id.* at § 130.00(3).  And "[w]hether a defendant's actions were motivated by a desire for sexual gratification can be inferred from the defendant's conduct, as well as the surrounding circumstances."  *People v. Rose*, N.Y.S.3d 632, 635 (App. Div. 2020).  Here, MB reported at her medical examination shortly after the assault that petitioner had

touched her breasts and vagina with his hands.  Tr. 229–30.  That evidence, in the context of the whole interaction, sufficed to establish the offence's sexual contact element.  *See People v. Stasiak*, 808 N.Y.S.2d 819, 820 (App. Div. 2006) (holding that testimony that the defendant was "groping [the victim's] breasts and vaginal area . . . was sufficient to establish '[s]exual contact'").  And just as with the other convictions, the forcible compulsion element was established by MB's testimony about petitioner's use of a knife and threatening demeanor.  *See* p. 20, *supra*.

*Menacing in the Second Degree.*  "A person is guilty of menacing in the second degree when . . . [h]e . . . intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, [or] dangerous instrument."  N.Y. Penal Law § 120.14(1).  In view of MB's testimony regarding petitioner's threatening use of a knife, it was not objectively unreasonable for the appellate division to reject petitioner's sufficiency challenge to this conviction.  Petitioner argues that the factual basis for this conviction is undercut by the prosecutor's decision not to charge him with criminal possession of a weapon for possessing the knife in question (or by the dismissal of such charges), *see* Pet. 8, but the decision as to "what charge[s] to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion," *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), and the prosecutor's charging decisions do not negate the evidence supporting petitioner's conviction.[3]

*Harassment in the Second Degree.*  "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e . . . strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same."  N.Y. Penal Law § 240.26(1).  MB testified that petitioner "struck [her] in [her] head" and cut her

---

[3] The warden argues that this argument is unexhausted, *see* Warden's Opp'n 25–26, a fact that would normally preclude habeas review.  I exercise my discretion to deny this unexhausted claim on the merits.  *See* 28 U.S.C. § 2254(b)(2).

with a knife, Tr. 101–02, and she had injuries that were consistent with being punched in the face and being struck with a knife, *see id.* at 236–38.  Based on this evidence, the appellate division acted reasonably when it rejected petitioner's sufficiency challenge.

ii.    *Convictions with Respect to JJ*

Sufficient evidence likewise supported petitioner's two convictions with respect to JJ.

*Harassment in the Second Degree.*  JJ's testimony that petitioner "grabbed [her] and tried to pull [her] in" to the stairwell, and then, once they arrived, "began to touch [her] and [to] try to hug [her]," all the while holding a knife, Tr. 29–30, suffices to establish the elements of second-degree harassment just described, *see* p. 21, *supra*.

*Menacing in the Third Degree.*  "A person is guilty of menacing in the third degree when, by physical menace, he . . . intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury."  N.Y. Penal Law § 120.15.  "Physical menace" requires "more than verbal threats."  *People v. Sylla*, 792 N.Y.S.2d 764, 766 (App. Div. 2005).  Here, in addition to JJ's testimony about petitioner grabbing her and pulling her into the stairwell, JJ also testified that petitioner "stuck a knife into the elevator and told [her] to follow him," causing her to "fear[] for [her] life."  Tr. 29.  The appellate division could reasonably conclude that that evidence was legally sufficient to support petitioner's conviction.

Petitioner argues that neither conviction can stand because (1) the jury acquitted him of "every other count" with respect to JJ and (2) he was never charged with criminal possession of a weapon in relation to the knife.  *See* Pet. 6.  But as discussed above, the prosecutor's decision not to charge petitioner for possessing the knife or submit such a charge to the jury does not negate JJ's testimony that the knife existed, *see* p. 21, *supra*, and the jury's finding of reasonable doubt as to whether petitioner raped JJ similarly does not invalidate its finding that he harassed and menaced her beyond a reasonable doubt.

22

## B.  Corresponding Ineffective-Assistance-of-Counsel Claims

Petitioner also brings various ineffective-assistance claims relating to these evidentiary challenges.  *See* Pet. 10–17.  Because, as just explained, legally sufficient evidence supported each of petitioner's convictions, *see* pp. 19–22, *supra*, ineffective-assistance claims based upon the failure of petitioner's trial or appellate counsel to properly preserve sufficiency challenges necessarily fail, *see Lafler v. Cooper*, 566 U.S. 156, 167 (2012); *see also United States v. Fusco*, 560 F. App'x 43, 46 (2d Cir. 2014).  The same goes for petitioner's claim that his trial counsel was ineffective for failing to object to the verdicts as against the weight of the evidence.  Trial counsel's failure to make a contemporaneous objection did not prejudice petitioner: petitioner's weight-of-the-evidence claims were properly raised for the first time on appeal, and the appellate division considered—and rejected—them on the merits.  *See Koiki*, 32 N.Y.S.3d at 516.

That leaves petitioner's ineffective-assistance claims relating to the failure of his state-court counsel to preserve claims that the jury's verdicts were internally inconsistent and thus invalid under New York's repugnancy doctrine.[4]  Under that doctrine, a "defendant cannot be convicted when the jury actually finds, via a legally inconsistent split verdict, that the defendant did not commit an essential element of the crime."  *People v. DeLee*, 26 N.E.3d 210, 213 (N.Y. 2014); *see People v. Tucker*, 431 N.E.2d 617, 618–19 (N.Y. 1981).  A jury's verdict will be deemed repugnant "only if it is legally impossible—under all conceivable circumstances—for the jury to have convicted the defendant on one count but not the other."  *People v. Muhammad*, 959 N.E.2d 463, 468 (N.Y. 2011).  That analysis requires "review[ing] the elements of the offenses as charged to the jury without regard to the proof that was actually presented at trial," *id.* at 470, to determine

---

[4] While the substantive repugnancy claims sound in state law and are thus not cognizable on federal habeas review, *see* p. 18, *supra*, a federal ineffective-assistance claim may lie based upon a failure to adequately raise meritorious state law arguments.  *See, e.g.*, *Lynch v. Dole*, 789 F.3d 303, 311 (2d Cir. 2015).

23

whether a verdict of acquittal on one charge "negate[s] any of the elements" of a charge on which the jury convicted, *People v. Johnson*, 72 N.Y.S.3d 536, 537 (App. Div. 2018).

All told, "a conviction will be reversed only in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered." *Tucker*, 431 N.E.2d at 619.  But "[i]f there is a possible theory under which a split verdict could be legally permissible, it cannot be repugnant, regardless of whether that theory has evidentiary support in a particular case." *Muhammad*, 959 N.E.2d at 468.  The dispositive inquiry is whether the charge on which the jury acquitted contained any element not present in the charge on which the jury convicted—if so, there can be no repugnancy. *See People v. Arman* 132 N.Y.S.3d 791, 792 (App. Div. 2020); *People v. Arman*, 126 N.Y.S.3d 730, 733 (App. Div. 2020); *People v. Shoshi*, 113 N.Y.S.3d 139, 140–41 (App. Div. 2019).

Applying these principles, the jury's verdicts were not internally inconsistent.  Accordingly, petitioner's state-court counsel did not render ineffective assistance by failing to properly preserve any such claims.  Take the claims relating to each victim in turn.

### 1. Convictions as to MB

Petitioner makes two main repugnancy arguments with respect to his convictions for crimes relating to MB.  Neither is persuasive.

First, petitioner argues that, because the jury acquitted him of second-degree assault, third-degree assault, and criminal obstruction of breathing with respect to MB, it could not rationally have convicted him of rape, criminal sexual act, or sexual abuse.  *See* Pet. 6–7.  But each of the two assault charges on which petitioner was acquitted contained an element not present in any of the charges of conviction.  Specifically, both assault in the second degree and assault in the third degree require proof that the defendant caused physical injury to another person, *see* N.Y. Penal Law § 120.05(6); Tr. 438–39 (assault in the second degree); Penal Law § 120.00(1); Tr. 439–40

(assault in the third degree), where "[p]hysical injury means impairment of physical condition or substantial pain," Tr. 432; N.Y. Penal Law § 10.00(9). None of the crimes of which petitioner was convicted—rape in the first degree, *see* N.Y. Penal Law § 130.35(1); Tr. 423–24, criminal sexual act in the first degree, *see* N.Y. Penal Law § 130.50(1); Tr. 426–27, and sexual abuse in the first degree, *see* N.Y. Penal Law § 130.65(1); Tr. 428–30—require a similar finding of actual physical injury to the victim.

Petitioner also argues that his conviction of menacing in the third degree with respect to MB is repugnant in view of the fact that he was not charged with criminal possession of a weapon. But the repugnancy doctrine applies only where the jury has actually returned inconsistent verdicts; since no possession charge was ever submitted to the jury here, petitioner's repugnancy claim would have been futile. *See People v. Brown*, 956 N.Y.S.2d 899, 899–900 (App. Div. 2013).

Accordingly, because none of these repugnancy claims would have succeeded on the merits, petitioner has failed to demonstrate prejudice from the failure of his trial and appellate counsel to present the repugnancy claims to the state courts. *See* Pet. 10–13, 15–17. Accordingly, petitioner is not entitled to habeas relief based on his counsel's failure to raise a repugnancy challenge to petitioner's convictions relating to MB.

2. Convictions as to JJ

Next, petitioner contends that his convictions as to JJ for menacing in the third degree and harassment in the second degree were inconsistent with the jury's decision to acquit him of every other charge relating to JJ—namely, rape in the first degree, criminal sexual act in the first degree, two counts of sexual abuse in the first degree, and menacing in the second degree. *See* Pet. 6. But these arguments similarly fail. As discussed above, "[a] person is guilty of menacing in the third degree when, by physical menace, he . . . intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury," N.Y. Penal Law § 120.15;

Tr. 434–35, and "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [h]e . . . strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same," N.Y. Penal Law § 240.26(1); Tr. 436–37.  Each of the charges on which the jury acquitted contained at least one element not present in either of those two crimes.  To wit:

- Rape in the first degree includes the element of sexual intercourse.  *See* N.Y. Penal Law § 130.35(1); Tr. 423–24.

- Criminal sexual act in the first degree includes the element of oral sexual conduct. *See* N.Y. Penal Law § 130.50(1); Tr. 426–27.

- Sexual abuse in the first degree includes the element of sexual contact.  *See* N.Y. Penal Law § 130.65(1); Tr. 428–30.

- Menacing in the second degree requires the display of a dangerous instrument.  *See* N.Y. Penal Law § 120.14(1); Tr. 431–33.

Given these differences, the jury's verdicts of acquittal on these charges "did not negate any of the elements" of the third-degree menacing or second-degree harassment charges on which petitioner was convicted, *Johnson*, 72 N.Y.S.3d at 537, and it was therefore not "legally impossible—under all conceivable circumstances—for the jury to have convicted the defendant on [those] count[s] but not the other[s]," *Muhammad*, 959 N.E.2d at 468.

Because petitioner has failed to demonstrate prejudice from his counsel's failure to present any repugnancy claims with respect to the verdicts concerning JJ, petitioner's ineffectiveness claims based on that theory are without merit.

## CONCLUSION

For the foregoing reasons, the petition is denied.  And because petitioner has not shown "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S.

880, 893 n.4 (1983)) (quotation marks omitted), a certificate of appealability under 28 U.S.C. § 2253(c)(2) is also denied.  In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

   The Clerk of Court is directed to enter judgment and close the case.

   SO ORDERED.

                                             */s/ Rachel Kovner*
                                             RACHEL P. KOVNER
                                             United States District Judge

Dated: July 12, 2023
          Brooklyn, New York